# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

LIBERTY INSURANCE
CORPORATION,

                    Plaintiff,

v.

TINPLATE PURCHASING
CORPORATION, TRAKLOC
NORTH AMERICA, LLC and
DAVID JABLOW

                    Defendants/
                    Counterclaimants

:
:
:
:
:
:
:
:
:

CASE NO. 2:09-cv-05221-WHW-CCC

---

## BRIEF OF DEFENDANTS/COUNTERCLAIMANTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF, LIBERTY INSURANCE COMPANY

---

NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 618-0400
Attorneys for Defendants/
  Counterclaimants

Of Counsel:
Jay J. Rice, Esq.

On the Brief:
Jay J. Rice, Esq.
Randee M. Matloff, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

POINT I.  THE INSUREDS' ARE ENTITLED TO A
DEFENSE FOR THE CLAIMS BEING PURSUED
AGAINST THEM IN THE PACIFIC ROLLFORMING
LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT II.  NONE OF THE POLICY EXCLUSIONS LIBERTY
RELIED UPON ARE APPLICABLE . . . . . . . . . . . . . . . . . . . . . . . . . . .13

POINT III.  EVEN IF THE COURT HOLDS THAT AN
EXCLUSION APPLIES, LIBERTY SHOULD BE ESTOPPED
FROM DENYING A DEFENSE BY VIRTUE OF ITS
EXTENSIVE DELAY IN COMJUNICATING ITS DECISION . . . . . . . . 26

POINT IV.  COUNTERCLAIMANTS ARE ENTITLED TO
PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF THE
DUTY TO DEFEND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

i

# **TABLE OF AUTHORITIES**

Cases

Aetna Ins. Co. v. Weiss, 174 N.J. Super. 292 (App. Div.),
     *certif. denied*, 85 N.J. 127 (1980)...................................... 14

Boccone v. Eichen Levinson, LP, 2007 WL 77328 (D.N.J. Jan. 5, 2007),
     *aff'd*, 301 Fed. Appx. 162 (3d Cir. 2008) ......................... 18,31

Barrett v. New Jersey Mfrs. Ins. Co., 295 N.J. Super. 613
     (App. Div. 1996), *certif. denied*, 150 N.J. 29 (1997) .................27

Burd v. Sussex Mut. Ins. Co., 56 N.J. 383 (1970) ........................... 9

Butler v. Bonner & Barnewall, Inc., 56 N.J. 567 (1970) ..................... 11

Capitol Indemnity Corp. v. Elston Self Service Wholesale Groceries, Inc.,
     551 F.Supp. 2d 711 (N.D. Ill. 2008),
     *aff'd*, 559 F.3d 616 (7th Cir. 2009) ................................19

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ......................... 30

Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.,
     260 F.3d 742 (7th Cir. 2001) .....................................20

City of Cape May v. St. Paul Fire & Marine Ins. Co.,
     216 N.J. Super. 697 (App. Div. 1987) ............................. 18

Danek v. Hommer, 28 N.J. Super. 68 (App. Div. 1953),
     *aff'd o.b.*, 15 N.J. 573 (1954) .....................................8

Doto v. Russo, 140 N.J. 544, 557 (1995)........................... 14,27

Ellmex Construction Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195
     (App. Div. 1985), *certif. denied*, 103 N.J. 453 (1986)................ 13

Employers Commercial Union Ins. Co. v. Kottmeier, 323 So.2d 605
     (Fla.Ct. App. 2nd Dist 1975) .....................................23

ii

Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.,
   316 F.3d 431 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

Fuisz v. Selective Ins. Co. of Am. 61 F.3d 238 (4th Cir. 1995). . . . . . . . . . . . . . . .23

Gray v. Zurich Insurance Co., 65 Cal. 2d 263, 419 P.2d 168,
   Cal.Rptr.104 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Greenberg & Covitz v. National Union Fire Ins. Co,
   312 N.J. Super. 251(App. Div. 1998)
   certif. den. 157 N.J. 577 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Griggs v. Bertram, 88 N.J. 347 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26,27

Houbigant Inc. v. Federal Insurance Co., 374 F.3d 192 (3d Cir. 2004). . . . . . . 16

Jeffer v. National Union Fire Ins. Co.,
   306 N.J. Super. 82 (App. Div. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jolley v. Marquess, 393 N.J. Super. 255 (App. Div. 2007). . . . . . . . . . . . . . . . 9

Kievit v. Loyal Prot. Life Ins. Co., 34 N.J. 475 (1961). . . . . . . . . . . . . . . . . . . .11

L.C.S. Inc. v. Lexington Ins. Co.,
   371 N.J.Super. 482 (App. Div. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1 (1961). . . . . . . . . . . . . . . . . . . 10

McClellan v. Feit, 376 N.J. Super. 305 (App. Div. 2005). . . . . . . . . . . . . . . . . 8

Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 612 (1986). . . . . . . . . . . . . . 10

Morrone v. Harleysville Mut. Ins. Co.,
   283 N.J. Super. 411 (App. Div. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 13

Morton Inter., Inc. v. General Acc. Ins. Co., 134 N.J. 1 (1993),
   certif. denied 512 U.S. 1245 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Old Hickory Products Co. v. Hickory Specialties, Inc.,
    366 F.Supp. 913 (N.D. Ga 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Pettinato v. Cigna Property & Cas. Co.,
    303 N.J. Super. 576 (Law Div.),
    *rev'd on other grounds sub nom.*,
    DeCarlo v. Pettinato,
    303 N.J. Super. 410 (App. Div. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . 10

Runyan v. Continental Casualty Co.,
    233 F. Supp. 214 (D.C. Ore. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

SL Industries, Inc. v. American Motorists Ins. Co.,
    128 N.J.188 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sparks v. St. Paul Ins. Co., 100 N.J. 325 (1985). . . . . . . . . . . . . . . . . . . . . . . . . 11

State Farm Fire & Cas. Co. v. Middleton,
    65 F. Supp.2d 1240 (M.D. Ala. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

St. Hudson Engineers, Inc. v. Pennsylvania National Mutual Casualty Co.,
    388 N.J. Super. 592, 604 (App. Div. 2006),
    *certif. denied* 189 N. J. 647 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 11

Town of Massena v. Healthcare Underwriters Mut. Ins. Co.,
    98 N.Y.2d 435, 779 N.E.2d 167,
    749 N.Y.S.2d 456 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Virtual Business Enterprises, LLC v. Maryland Casualty Co.,
    2010 WL 1427409 (Del. Super. April 9, 2010). . . . . . . . . . . . . . . . . . . . 20

Vorhees v. Preferred Mutual Ins. Co., 128 N.J. 165 (1992). . . . . . . . . . . . . . . .8,18
                                                  26,30

Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 320 (1985). . . . . . . . . . . 11

iv

Zurich American Ins. Co. v. Keating Bldg. Corp.,
    513 F. Supp.2d 55 (D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Rules & Statues

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

Local Rule 56.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

10 California Code of Regulations §2695.7(b) . . . . . . . . . . . . . . . . . . . . . . . 28

10 California Code of Regulations §2695.7(c) . . . . . . . . . . . . . . . . . . . . . . . 28

## PRELIMINARY STATEMENT

This brief is submitted on behalf of defendants/counterclaimants Trakloc North America, LLC ("TLNA"), David Jablow and Tinplate Purchasing Corporation ("Tinplate") in support of their motion for partial summary judgment against plaintiff Liberty Insurance Company ("Liberty"). We contend that Liberty breached its contract of insurance, as well as its duty of good faith and fair dealing, by refusing to provide a defense[1] and indemnification on behalf of these defendants, insured by Liberty, with respect to litigation pending against them in the Southern District of California. After a lengthy and unjustified delay, Liberty commenced a declaratory judgment action and denied the tender of defense made by defendants' California counsel, improperly relying upon a series of exclusions in the applicable insurance policy which --on its face-- provides coverage for "Personal and advertising injury."

This Court should grant defendants' motion for partial summary judgment and hold that Liberty breached its obligation to defend the insureds and that the failure to provide a defense, magnified by the extensive and unjustified delay in

---

[1] Counsel for the parties in this litigation agreed to bifurcate the duty to defend from the duty to indemnify. While we contend that Liberty should both defend and indemnify its insureds we acknowledge that it may be premature for the court to rule on the indemnification aspect of the case until the underlying litigation is concluded.

communicating its decision, constitutes bad faith. Plaintiff, Liberty's, cross-motion for summary judgment seeking a declaratory judgment that it has no such duty should be denied.

## STATEMENT OF FACTS[2]

Tinplate has been insured by Liberty under a series of General Liability Policies, Policy No. TB7-131-508276-026 (effective 5/24/06-5/24/07); Policy No. TB7-131-508276-027 (effective 5/24/07-5/24/08); Policy No. TB7-131-508276-028 (effective 5/24/08-5/24/09.) TLNA is an additional insured under the Policies and David Jablow is an officer and/or manager of both entities.[3] Each of these policies contains a Personal and Advertising Injury Endorsement which provides, in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for personal and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any offense and settle any claim or "suit" that may result.

---

[2] In addition to this factual summary, defendants rely upon the Certification of David Jablow and the Statement of Material Facts submitted pursuant to Local Rule 56.1.

[3] As set forth below, the additional insured issue has been resolved by stipulation.

> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

The Policy further defines "Personal and advertising injury" to mean:

> a. Injury, including consequential "bodily injury", to the feelings and reputation of a natural person (including mental anguish) caused by an offense arising out of your business, except injury arising out of:

> (1) your "advertisement", or

> (2) publishing, broadcasting or telecasting done by or for you.

> b. Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

> . . . . .

> (4) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . .

On or about September 27, 2007, TLNA and David Jablow were named as defendants in a litigation commenced in the United States District Court for the Southern District of California entitled *Pacific Rollforming, LLC v. Trakloc International, LLC et. al*, Case No. 3:07-cv-01897-L-AJB. ("*Pacific Rollforming* litigation"). This complex litigation brought against numerous corporate and

3

individual defendants, concerns a series of business transactions relating to a license granted to the plaintiff, Pacific Rollforming LLC to manufacture and market a proprietary drywall and stud framing system known as Trakloc. A First Amended Complaint was filed before TLNA and Jablow were served with the initial pleading and a Second Amended Complaint was filed on September 25, 2008.

Thereafter the parties engaged in a series of lengthy negotiations regarding various business solutions in an attempt to resolve their differences. When these negotiations failed the defendants hired California litigation counsel, Ms. Irena Leigh Norton. On January 26, 2009, Ms. Norton, tendered a notice of claim requesting defense and indemnification from Liberty with respect to this lawsuit. A copy of the Second Amended Complaint was provided to Liberty along with correspondence explaining that the pleading asserted claims for breach of contract, fraud, breach of the implied covenant of good faith and fair dealing; defamation; interference with prospective economic advantage, RICO; injunctive and declaratory relief. Ms. Norton asserted that the claims for defamation and interference with prospective economic advantage brought the defense of all those claims within the ambit of the policy.

It took almost a month, until February 25, 2009 for Liberty to acknowledge receipt of the claim and assign Claim No. P-001-062744-01. Liberty, through

Chief Examiner, Marcia Rowell indicated that they would investigate whether David Jablow and Trakloc were entitled to a defense and/or indemnification under the Liberty Policies and requested information regarding the pleadings in the California action and the relationship between Trakloc and Tinplate. The very next day defendants' California Counsel forwarded the requested material to Liberty. On March 20, 2009, since no response was received, Ms. Norton followed up and requested an update regarding status from Liberty.

On April 1, 2009 Ms. Rowell, on behalf of Liberty, responded to this inquiry and indicated that they were still investigating the applicable coverage. She claimed that there was nothing in the policy documents that indicated that Trakloc was an additional insured under the Tinplate policy, but they were continuing to search their files. Communications continued over the course of several months with Liberty questioning the additional insured status of Trakloc and Ms. Norton providing documentation establishing the defendants' status and information on the California litigation. On July 24, 2009, Ms. Norton again inquired as to Liberty's coverage decision. Ms. Norton also updated Ms. Rowell with respect to events occurring in the *Pacific Rollforming* litigation, including the filing of a motion for leave to amend the Complaint. The proposed Third Amended Complaint, which named Tinplate as a direct defendant was provided to Liberty.

On September 30, 2009, Ms. Norton again inquired as to Liberty's coverage decision and updated Ms. Rowell on the status of the *Pacific Rollforming* litigation including the fact that the Third Amended Complaint had been filed. She concluded her September 30, 2009 correspondence to Liberty by stating: "Liberty Mutual's failure to provide any coverage position has placed its insureds at a substantial disadvantage in defending this action, and the eight month period since the initial tender far exceeds the regulatory guidelines instated by the State of California. Please advise when a coverage position will be forthcoming."

Finally, on October 16, 2009, Liberty's coverage counsel, John Love, Esq., denied defendants request for defense and indemnification. He provided Ms. Norton with a copy of the instant Declaratory Judgment Complaint Liberty had filed several days earlier, on October 13, 2009 along with a copy of his coverage denial letter.    In denying defense and indemnification, Mr. Love's analysis referenced the Second Amended Complaint and only provided passing reference to the Third Amended Complaint. He further continued to question whether Trakloc is an insured and indicated that Liberty was continuing to investigate that issue. These specific issues have been addressed by virtue of Liberty's filing of an Amended Complaint and counsel for the parties in the instant case having entered a Joint Stipulation deeming Trakloc North America LLC an additional insured effective July 1, 2007.

6

On June 18, 2010 the Court in California issued its decision with respect to the numerous motions to dismiss filed by various parties regarding numerous claims. Relevant to the instant proceeding, the Court denied Tinplate's motion to dismiss, finding that there were ambiguities in the relevant agreements. Judge M. James Lorenz stated:

> Pacific's claims against Tin Plate are premised on its alleged status as successor-in-interest to TLI and Pandora with respect to the intellectual property rights referenced in the License Agreement. Tin Plate argues that it is not a successor-in-interest because it did not acquire the relevant intellectual property rights . . . The parties dispute whether, as allowed for by the Purchase of Assets provision, other terms and conditions of the Purchase Agreement specify that only TLNA acquired Pandora's interest in the intellectual property subject to the License Agreement and assumed the obligations thereunder. (See Exhibit O at 21-23).

In addition, the California Court granted TLNA and Jablow's motion to dismiss the intentional interference claim set forth in the Twelfth Count with leave to replead, because insufficient allegations of independent wrongful conduct were alleged. Consequently, the California litigation continues and as of June 1, 2010, attorneys' fees in the California litigation total $261,644.00 with costs of $3,312.91 and interest on those fees of $9,033.96.

## ARGUMENT

## POINT I

## THE INSUREDS' ARE ENTITLED TO A DEFENSE FOR THE CLAIMS BEING PURSUED AGAINST THEM IN THE PACIFIC ROLLFORMING  LITIGATION

In this case, Plaintiff Liberty has violated its contractual duty to defend.  The duty to defend clause is triggered whenever there is a potentially coverable occurrence. Vorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 180 (1992). The duty of an insurer to defend its insured, which is itself a valuable right, is broader than the duty to indemnify. The duty is triggered when the complaint against the insured "states a claim constituting a risk insured against." St. Hudson Engineers, supra 388 N.J. Super. 592, 606 (App. Div. 2006) *certif. den.* 189 N.J. 647 (2007), citing Danek v. Hommer, 28 N.J. Super. 68,77 (App. Div. 1953), *aff'd o.b.*, 15 N.J. 573 (1954).  When multiple alternative causes of action are stated, the duty will continue until every covered claim is eliminated and the wording of the complaint need not be articulate. Voorhees, supra. at 174.  Further, it is the essence of the allegations in the complaint, rather than the specific terms pled, that should be considered in determining if a claim is covered. See McClellan v. Feit, 376 N.J. Super. 305, 313 (App. Div. 2005). The entire complaint as well as the underlying facts should be analyzed together to determine whether the insurer has a duty to defend. Where the duty to defend or the question of indemnification depends upon

a factual issue the duty to defend may depend upon the actual facts rather than the allegations in the complaint. Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 388 (1970).

In SL Industries, Inc. v. American Motorists Ins. Co., 128 N.J.188, 198 (1992), the Court stated:

> The first question is whether the duty to defend is triggered by facts indicating potential coverage that arise during the resolution of the underlying dispute. We conclude that facts outside the complaint may trigger the duty to defend.
>
> Our holding is in accord with most insureds' objectively reasonable expectations. Insureds expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured. To allow the insurance company "to construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true but unpleaded facts within its knowledge that require it, under the insurance policy, to conduct the putative insured's defense" would not be fair.

*Accord*: Jolley v. Marquess, 393 N.J. Super. 255, 271-272 (App. Div. 2007).

In SL Industries, the Court held that if the insured conveys information to the insurer that will trigger coverage, the insured must be reimbursed for previously expended defense costs. Id. at 200. Further, if pretrial discovery, amendments to the pleadings or evidence adduced at trial results in new claims

9

against the insured that are within coverage under the policy the insurer may be obligated to defend and indemnify against the new claim that was not initially alleged in the complaint. Greenberg & Covitz v. National Union Fire Ins. Co., 312 N.J. Super. 251, 258 (App. Div. 1998) *certif. den.* 157 N.J. 577 (1998). Under those circumstances, the insurer may be obligated to defend from the date when the new claim was asserted and reimburse the insured for previously incurred defense costs. Pettinato v. Cigna Property & Cas. Co., 303 N.J. Super. 576, 580 (Law Div.), *rev'd on other grounds sub nom.*, DeCarlo v. Pettinato, 303 N.J. Super. 410 (App. Div. 1997); Jeffer v. National Union Fire Ins. Co., 306 N.J. Super. 82, 92-93 (App. Div. 1997).

If two conflicting theories are set forth in a complaint, one requiring coverage while the other does not, the carrier must defend although it may do so under a reservation of rights. L.C.S. Inc. v. Lexington Ins. Co., 371 N.J.Super. 482, 497 (App. Div. 2004).

In addition, any ambiguities in contracts of insurance will be resolved against the drafter, the insurance company, so that the insured will be protected "to the full extent that any fair interpretation will allow." Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 7 (1961). Thus, where policy language will support two meanings, the ambiguity must be resolved in favor of coverage. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992); Meier v. New Jersey Life Ins.

10

Co., 101 N.J. 597, 612 (1986). Indeed, the New Jersey Supreme Court has held that, in some instances, even unambiguous policy language will be liberally construed to meet the insured's reasonable expectation, because insurance policies are contracts of adhesion. See Sparks v. St. Paul Ins. Co., 100 N.J. 325 (1985); Morton Inter., Inc. v. General Acc. Ins. Co., 134 N.J. 1, 76 (1993), *certif. denied* 512 U.S. 1245 (1994); Kievit v. Loyal Prot. Life Ins. Co., 34 N.J. 475, 483 (1961); St. Hudson Engineers, Inc. v. Pennsylvania National Mutual Casualty Co., 388 N.J. Super. 592, 604 (App. Div. 2006), *certif. denied* 189 N. J. 647 (2007) (citing Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970) and Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 320 (1985)).

In this case, the defendants are covered under a series of CGL Policies with Liberty for the entire period governing this litigation. These policies provide  $1 million in coverage for any one person or organization for Personal and Advertising Injury. The applicable insurance policy defines, in relevant part, "personal and advertising injury" as "injury . . . arising out of one or more of the following offenses:

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . .

· 11

Although the Second Amended Complaint only named Trakloc and Jablow, the Third Amended Complaint filed in the *Pacific Rollforming* litigation in California asserts claims against all three insureds for conduct that clearly fits this definition of advertising injury. More specifically, Plaintiffs in the *Pacific Rollforming* litigation allege in the Third Amended Complaint that:

> 29. . . . . Defendant TLNA further began immediately publishing to third parties disparaging comments about TRAKLOC PACIFIC's conduct as well as confidential information about TRAKLOC PACIFIC's finances in an effort to discourage third parties from continuing with or commencing to do any business with TRAKLOC PACIFIC.

> 34.    Commencing on or  before September of 2007, Defendants TLNA, Jablow, SEM, Nelson and Horst entered into a conspiracy to destroy TRAKLOC PACIFIC and put TRAKLOC PACIFIC out of business by defaming TRAKLOC PACIFIC through false statements about its certification as a manufacturer of the Trakloc product and that it had no right to manufacture or sell the Trakloc product as well as other false statements. Defendants TLNA, Jablow, Nelson and Horst, pursuant to this conspiracy, have engaged in numerous acts of libel and slander against Trakloc Pacific by the written and oral publication of said libelous and slanderous comments to third parties, including other Trakloc licensees, vendors to Trakloc Pacific, distributors of Trakloc Pacific and customers or potential customers of Trakloc Pacific. . .

35.    The aforesaid publications and representations were all false and defamatory and intended to be defamatory. Said representations were willful and malicious in that their intent is to put Trakloc Pacific out of business . . .

36.    By reason of said acts of libel and slander, Trakloc Pacific has been damaged in an amount to be proven at the time of trial herein, but believed to be in excess of $20,000,000.00.

37.    By reason of the willful, deliberate and malicious nature of the conduct of defendants, Trakloc Pacific is entitled to exemplary damages against Defendants, and each of them jointly and severally, in an amount of at least $50,000,000.00.

These allegations, standing alone, are sufficient to trigger coverage under the applicable policy. Thus, unless Liberty can establish that one of the exclusions contained in the policy clearly and unambiguously precludes coverage, Liberty has breached its duty to defend by refusing to provide a defense to TLNA, Tinplate and Jablow in the *Pacific Rollforming* litigation.

## POINT II

### NONE OF THE POLICY EXCLUSIONS LIBERTY RELIES UPON ARE APPLICABLE

It is well-settled that "exclusionary clauses are enforceable only if clearly applicable, are narrowly read and any ambiguities are resolved in favor of the

insured." <u>Morrone v. Harleysville Mut. Ins. Co.</u>, 283 N.J. Super. 411, 420 (App. Div. 1995); <u>Ellmex Construction Co., Inc.v. Republic Ins. Co.</u>, 202 N.J. Super. 195, 205 (App. Div. 1985), *certif. denied*, 103 N.J. 453 (1986). When a court construes an ambiguous clause in an insurance policy, it should consider whether more precise language by the insurer, had such language been included in the policy, 'would have put the matter beyond reasonable question.'" <u>Doto v. Russo</u>, 140 N.J. 544, 557 (1995). Our courts squarely place the burden on the insurer to establish that the exclusion bars coverage and that the insured's interpretation of the exclusion is entirely unreasonable. <u>Aetna Ins. Co. v. Weiss</u>, 174 N.J. Super. 292, 296 (App. Div.), *certif. denied*, 85 N.J. 127 (1980). <u>Zurich American Ins. Co. v. Keating Bldg. Corp.</u>, 513 F. Supp.2d 55 (D.N.J. 2007)(burden is on the insurer to bring the case within the exclusion.).

In Liberty's letter denying coverage, which was not even provided until after this coverage litigation was commenced, Liberty cited to four different exclusions to the advertising injury provisions as a basis to avoid its contractual obligations. None of these clauses permits Liberty to avoid its duty to defend; if Liberty's construction of the policy is accepted, it will violate the reasonable expectations of the insured and render the policy illusory.

**A.** **Exclusion "f" for "Breach of Contract" Does Not Apply to the Disparagement Claims**

Liberty contends that all of the allegations of the pleadings arise out of breach of a contract, namely, the "License Agreements" and are excluded by Exclusion "f", which provides: "the insurance does not apply to "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising ideas in your "advertisement."

As set forth in the Certification of David Jablow, although the insureds are party to a license contract, that had nothing to do with Trakloc Pacific's claimed injury resulting from the purported defamation. David Jablow believed (and it is true) that Trakloc Pacific was on the verge of insolvency, and had been informed by Trakloc Pacific's principals that it lacked enough money to support its customers with product to complete jobs and support. The insureds stepped in to try to help the customers in terms of making product available to them and to make support available to them. Jablow did not want Trakloc to get a bad name around the country because Trakloc Pacific could not supply and support the customers on a variety of high profile jobs as the MGM City Centre in Las Vegas and the Ritz Carlton in Northern California.

Consequently, while certain counts of the Third Amended Complaint may arise out of a breach of contract, the allegations regarding defamation leveled

against the insureds do not. On the plain language of the Third Amended Complaint and the undisputed facts before this Court, the alleged acts of oral or written disparagement do not arise out of the Licensing agreements, but are separate and independent of the Licensing agreements.

In its October 16, 2009 denial letter, without citation to any authority, Liberty contends that the exclusion for injury "arising out of" breach of contract applies to injuries that have a "substantial nexus" with any breach of contract. This is not the law in this jurisdiction.

In Houbigant Inc. v. Federal Insurance Co., 374 F.3d 192 (3d Cir. 2004), the insurance company sought to deny coverage, relying upon the same exclusion for 'injury arising out of a breach of contract' contained in Houbigant's advertising injury endorsement. The Court held, applying New Jersey law, that the contract exclusion did not preclude the insureds' claim. In that case, as in this one, both contract and tort claims were asserted against the plaintiff insured. The Court stated:

> While the New Jersey Supreme Court has not endorsed either test, at least one New Jersey appellate decision applied a "but for" analysis under similar circumstances. The policy in *Tradesoft* also contained a breach of contract exclusion, and the injury there undoubtedly flowed from the contractual relationship between the parties. Yet, in determining if the exclusion applied, the court considered whether any of the tort claims constituted an advertising injury. Moreover it did this

16

> without further reference to the contract exclusion. Our situation is analogous. Although the relationship between Houbigant and the Insureds is contractual, the actions of the Insureds were independently tortious. The contractual relationship was not endemic to the Insureds infringing of Houbigant's trademarks. Therefore, the contract exclusion does not apply to Houbigant's tort claims. (footnotes omitted) Id. at 203.

The Liberty Policy, by its very terms, requires that the personal and advertising injury arise out of the insureds' business. It would be a rare situation where a business would obtain a CGL policy and a businessman acting in the course of his business could slander a person or organization or disparage their goods, products or services without having some type of contractual relationship with the defamed party.  If Liberty's reading of this policy exclusion is accepted, essentially every oral or written publication encompassed by the personal and advertising injury endorsement would then be excluded by the "breach of contract" exclusion in the policy. This would clearly violate the reasonable expectations of the insureds and render the contact illusory.

**B.      "Intentional" or "Knowing" Exclusions "a" and "b" of the Personal and Advertising Injury Liability Coverage Does Not Preclude a Defense in This Case**

In its post-litigation denial letter, Liberty also contends that exclusions "a" and "b" to the Personal and Advertising Injury Liability Endorsement provide a

basis for the denial of a defense to the insureds in the *Pacific Rollforming* Litigation.

Exclusion "a" provides that the insurance does not apply to ""Personal and Advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury." The related Exclusion "b" provides that the insurance does not apply to ""Personal and advertising injury" arising out or oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Neither of these exclusions may be read so as to preclude coverage in this case.

As noted by Judge Chesler in Boccone v. Eichen Levinson, LP, 2007 WL 77328 (D.N.J. Jan. 5, 2007), *aff'd*, 301 Fed. Appx. 162 (3d Cir. 2008), relying upon Vorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992), "a third party does not write the complaint to apprise the defendant's insurer of potential coverage." Whether a claim is covered depends on the nature of the claim, not the "fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured." S.L. Indus. V. Am. Motorists Ins. Co., 128 N.J. 188, 198-99 (1992). See also City of Cape May v. St. Paul Fire & Marine Ins. Co., 216 N.J. Super. 697 (App. Div. 1987)(CLG coverage included claim for malicious interference with

business or economic relationships based upon utterance or defamatory and disparaging materials.).

In Capitol Indemnity Corp. v. Elston Self Service Wholesale Groceries, Inc., 551 F.Supp. 2d 711 (N.D. Ill. 2008), aff'd, 559 F.3d 616 (7th Cir. 2009) the insurer argued that it had no duty to defend its insured under the advertising injury provision of the policy relying on language identical to exclusion "b". The insurer argued that this Policy Exclusion precludes coverage for fraudulent, knowing and intentional torts and each count alleged that the defendants acted intentionally and sought punitive damages. The Court rejected the insurer's argument holding that "While Lorillard's complaint in the Underlying Action alleges willful conduct that alleged conduct is not necessary for Lorillard to prevail on its claims, since willfulness is not a required element to determine liability of many of the claims and allegations set forth in the underlying complaint." Id. at 726. The insurer also relied upon a policy provision excluding recovery of punitive damages arguing that each count of the underlying pleading sought punitive or exemplary damages but did not request compensatory damages. The Court rejected this basis for disclaiming coverage stating that the Complaint must be liberally construed with every inference drawn in favor of the insured. Under Illinois law, because punitive damages cannot be awarded in the absence of compensatory damages, the plaintiff

19

in the underlying action could be entitled to recover compensatory damages and the insurer still had a duty to defend.[4]

In Virtual Business Enterprises, LLC v. Maryland Casualty Co., 2010 WL 1427409 (Del. Super. April 9, 2010), the insurance policy covered advertising injury including "oral or written publication of material that . . . disparages a person's or organization's goods, products or services" and the insurer tried to rely upon the exclusion of "knowing infliction of personal and advertising injury." The court held that these policies "should not be interpreted as taking back with one hand what it gave with another, by excluding coverage of those torts because they are intentional." [citing Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co., 260 F.3d 742, 746 (7th Cir. 2001)]. The court held that the exclusion required both knowledge by the insured that the act would violate the rights of another and knowledge that the act would inflict personal and advertising injury. This could not be determined from the pleadings alone; hence, the insurer had a duty to defend. In Cincinnati Ins. Co., *supra* the Court rejected the insurer's attempts to disclaim coverage with respect to a counterclaim alleging tortious interference stating the coverage does not depend on the characterization of the wrong by the pleader. As

---

[4] In the *Pacific Rollforming* litigation, as can be seen from Paras. 36 and 37 of the Third Amended Complaint quoted above, both compensatory and punitive damages are being sought.

in the instant case, the policy did not mention tortious interference but contained the same language regarding slander or libel and disparagement of goods, products or services in the advertising injury section and excluded injury done by the insured with knowledge of its falsity. In rejecting the applicability of the exclusion the Court stated:

> The counterclaim is replete with allegations of deliberate misconduct by Eastern and Integrity, but these allegations do not take the case out of the basic policy. They are much more likely to have been intended as a pitch for punitive damages than as a limitation of the claim-a limitation because merely negligent defamation is actionable in Illinois when the victim is not a public figure. Such a limitation would be foolish; why would Midwest commit itself to abandon its claim for defamation merely because of inability to prove facts inessential to such a claim, though helpful in jacking up damages? Proof of deliberateness would merely be the icing on the cake. It is also possible that Midwest is describing as deliberate *misconduct* a case in which deliberate *disparagements* are made even if the disparager is merely negligent with regard to their truth. Unless he *knows* that his disparagements are false, he is not within the basic policy's exclusion. (citation omitted) Id. at 746.

The Courts in various jurisdictions have similarly required insurers to defend claims otherwise subject to the duty to defend despite allegations of intentional misconduct against the insured contained in the pleadings. *See* Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 98 N.Y.2d 435, 779 N.E.2d 167, 749 N.Y.S.2d 456 (2002)(Complaint contained allegations that the hospital

intentionally and maliciously made false statements to Franzon's patients, potential patients, and the community at large in an effort to damage his reputation as a doctor and that the statements were untrue. Court rejected insurer's reliance on exclusion for defamatory statements made within a business enterprise with knowledge of their falsity. Because knowledge of falsity was not established and doctor may be a limited public figure, reckless disregard would be sufficient to sustain claim; thus insurer had duty to defend); State Farm Fire & Cas. Co. v. Middleton, 65 F. Supp.2d 1240 (M.D. Ala. 1999)(In their Complaint, the Smiths allege that Middleton, in retaliation for the Smiths' breach of contract, caused their business to fail by wrongfully influencing SAW to renege on its credit arrangement with the Smiths and "engaged in wanton, spiteful, and malicious communications with [other] creditors and customers of the Smiths," thereby, contributing to the failure of the Smiths' business. Although the Smiths' allege that Middleton interfered with their business relations "for the purpose of having and/or destroying [the Smiths'] business," the allegation contains no language claiming that Middleton specifically intended or expected to cause mental anguish damages. Furthermore, even though Plaintiff correctly asserts that the Smiths' claim of tortious interference with business relations contains an element of intent, the court notes that this element can be satisfied without a showing of specific intent to injure."); Runyan v. Continental Casualty Co., 233 F. Supp. 214 (D.C. Ore.

1964)(exclusion "for any loss caused intentionally by or at the direction of the insured" did not preclude coverage for counts in complaint alleging malicious and unjustified interference with contract and slander since the actual injury or loss to the plaintiff caused by statements resulting in his termination may not have been intentional); Employers Commercial Union Ins. Co. v. Kottmeier, 323 So.2d 605 (Fla.Ct. App. 2nd Dist 1975)(insurer must defend defamation action unless it can be shown that statements were made with actual malice; otherwise exclusion "would be meaningless with respect to defamatory statements by the insured because it would provide coverage for libel and slander and yet take it away in the same breath."); Old Hickory Products Co. v. Hickory Specialties, Inc., 366 F.Supp. 913 (N.D. Ga 1973)(stylized allegations of willfulness in complaint alleging unfair advertising and marketing did not bar coverage as there were material issues of fact as to whether the advertising injury was expected and intended.)

Finally, in Fuisz v. Selective Ins. Co. of Am. 61 F.3d 238, 244-245 (4th Cir. 1995), where Fuisz allegedly published statements that Terex was doing business with Saddam Hussein and then sought a defense in the ensuing lawsuit brought against him, the Court noted:

> The complaint alleges that Fuisz "embarked on a scheme," conducted a "smear campaign," pursued a "vendetta," engaged in "malicious conduct" and made "repeated" false statements, all with the intent to injure Terex. In each of the four causes of action against Fuisz,

> Terex specifically reiterates that Fuisz "falsely,"
> "knowingly" and "maliciously" defamed Terex."

Despite these allegations the Court held that the insurer had a duty to defend, stating:

> Notwithstanding Terex's repeated allegations that Fuisz
> "willfully intended to injure," by also pleading that Fuisz
> acted with actual malice Terex has left open the
> possibility of another avenue of recovery if it is unable to
> establish Fuisz's intent to harm Terex's reputation. If the
> evidence at trial fails to establish that Fuisz intentionally
> harmed Terex, the complaint permits Terex nonetheless
> to prevail on its claims by proving that Fuisz intended no
> harm, but acted with reckless disregard for the falsity of
> his statements. (footnotes and citations omitted)

Accord:  Gray v. Zurich Insurance Co., 65 Cal. 2d 263, 419 P.2d 168, Cal.Rptr.104 (1966)(insurer was obliged to defend a third party action for assault under a CGL policy despite exclusionary language that the policy did not apply to bodily injury intentionally caused by the insured.)

In the *Pacific Rollforming* litigation, Trakloc Pacific pleadings are replete with allegations of malicious and intentional conduct. However, as has been acknowledged by the Courts in several of the cases cited above, a litigation strategy designed to position a plaintiff to recover punitive damages does not preclude a finding by the Court that a lesser standard of tortious conduct may have been committed. Further, as noted in the Certification of David Jablow, he

24

believed and continues to believe that any communications made which purportedly impacted Trakloc Pacific's business were and are true.

Indeed, since truth is always a defense to defamation, a plaintiff asserting such a claim will typically assert that the defendant knew the statement was false when he made the disparaging remarks.      If Liberty's analysis of this policy provision is correct, there is no way that any actionable disparagement claim could trigger the duty to defend since the intentional conduct exclusion and knowledge of falsity exclusion would always apply. Thus, since the Court will construe the Third Amended Complaint and the insurance policy in favor of the insured, Liberty has a duty to defend, and its failure to undertake its obligations pursuant to the insurance contract violates its duty to its insureds, here – TLNA, Tinplate and David Jablow.

**C.    Liberty is Not Absolved of Its Duty to Defend Because Exclusion "e" Only Applies to Certain Claims in the *Pacific Rollforming* Litigation**

Exclusion "e" of the Personal and Advertising Injury Endorsement provides that the "insurance does not apply to "Personal and Advertising Injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of a contract or agreement."

While this exclusion might be applicable to certain limited counts of the Complaint to the extent it can be shown that the insureds are liable for the conduct

of their predecessor, by virtue of assumption of that liability through some agreement, the defamation, disparagement and tortious interference counts would give rise to liability for damages whether or not any of the insureds had assumed liability as a successor to Trakloc International or any other entity. Since the duty to defend continues until every last covered claim is eliminated, Vorhees, *supra* 128 N.J. at 174 (1992), Liberty's reliance upon this exclusion as a basis for its complete refusal to undertake a defense in this case cannot withstand judicial scrutiny.

## POINT III

### EVEN IF THE COURT HOLDS THAT AN EXCLUSION APPLIES, LIBERTY SHOULD BE ESTOPPED FROM DENYING A DEFENSE BY VIRTUE OF ITS EXTENSIVE DELAY IN COMMUNICATING ITS DECISION

While we contend that none of the exclusions that Liberty cites as a basis to deny a defense are applicable, even if Liberty were correct, the Court should not permit the insurer to deny coverage based upon the manner in which Liberty handled the claim.

In Griggs v. Bertram, 88 N.J. 347 (1982),  the specific issue was whether the carrier would be estopped from denying coverage for a particular claim despite a clear contractual provision excluding the claim from coverage,  even where the insurance company had neither assumed control of the case nor prepared a defense,

26

but rather simply "failed for an unreasonable period of time to inform its insured of the possibility of a disclaimer of coverage, notwithstanding the insurer's early notification of a possible claim and awareness of grounds for disclaimer." Ibid. The Court resolved the question by holding that an insurance carrier that fails for an unreasonable period of time to inform an insured of a potential disclaimer, even after receiving timely notice of the claim, and even though it was aware of the basis to disclaim coverage, "is estopped from later denying coverage ... in the event a legal action is subsequently brought against its insured." Id. at 363-64. Similarly, in Barrett v. New Jersey Mfrs. Ins. Co., 295 N.J. Super. 613, 618-19 (App. Div. 1996), *certif. denied*, 150 N.J. 29 (1997), the Court stated:

> An insurance company which expressly or impliedly acknowledges that its policy provides coverage for a particular claim may be estopped from subsequently denying coverage if an insured has relied upon the availability of that coverage. Doto v. Russo, 140 N.J. 544, 557-60 (1995); Griggs v. Bertram, 88 N.J. 347, 355-64 (1982); Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 126-30 (1962). In fact, even an insurer which does not acknowledge coverage may be estopped by an "[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer." Griggs v. Bertram, supra, 88 N.J. at 357; see also Breitenbach v. Motor Club of Am. Ins. Co., ___ N.J. Super. ___ (App. Div. 1996). This form of estoppel "does not require a showing of intentional deceit." Bowler v. Fidelity & Casualty Co. of N.Y., 99 N.J. Super. 184, 192 (App. Div. 1968), rev'd on other grounds, 53 N.J. 313 (1969).

*See also* Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431 (3d Cir. 2003).

In this case, Liberty was first put on notice of the request for a defense in January 2009. California counsel kept the insurer apprised of the proceedings; provided all requested information, and continually inquired as to the status of the claim. Approximately 10 months later Liberty brought the instant declaratory judgment action and three days after that finally provided a copy of a denial letter.

As noted by California counsel in one of her many letters requesting a coverage decision, 10 California Code of Regulations (Cal. C. Regs.) §2695.7(b) and/or (c) provides, in relevant part:

> (b) Upon receiving proof of claim, every insurer, except as specified in subsection 2695.7(b)(4) below, shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety.
>
> (1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision,

28

> condition or exclusion to the claim. Every insurer that
> denies or rejects a third party claim, in whole or in part,
> or disputes liability or damages shall do so in writing.

Although it is difficult to predict precisely how things would have turned out differently if Liberty had promptly decided the coverage issue, as set forth in responses to Liberty's Interrogatories served in this action, the defendants may have made additional efforts to pursue settlement or may have made different business decisions regarding how to capitalize on Trakloc intellectual property. With the financial support of the very insurance for which it had paid, defendants may have been able to conduct more aggressive discovery and motion practice, to narrow the scope of the action or obtain summary adjudication of certain claims. As of June 1, 2010, attorneys' fees in the California litigation total $261,644.00 with costs of $3,312.91 and interest on those fees of $9,033.96. These fees continue to accrue.

Liberty's dilatory conduct smacks of bad faith and provides a basis for an estoppel to deny a defense thereby requiring Liberty to assume the responsibility for defense costs (and indemnification if necessary) to its insured in the *Pacific Rollforming* Litigation.

## POINT IV

## COUNTERCLAIMANTS ARE ENTITLED TO PARTIAL
## SUMMARY JUDGMENT ON THE ISSUE OF THE DUTY TO DEFEND

On a motion for summary judgment, Fed. R. Civ. P. 56(c) requires that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23(1986).

In Vorhees v Preferred Mutual Ins. Co., 128 N.J. 165, 173, 175 (1992), the Supreme Court affirmed the appellate court's reversal of summary judgment in favor of the carrier, and held that the insured was entitled to judgment for the recovery of her reasonable defense costs expended during litigation where the carrier had refused to defend. This is because ambiguities in the underlying complaint must be resolved in favor of the insured and in favor of coverage. Similarly, if the policy language is ambiguous, those doubts must also be resolved in favor of finding coverage so as to comport with the reasonable expectations of the insured. Consequently, unless it is crystal clear that there is nothing in the underlying pleading which would trigger the duty to defend, the insurance company breaches its contractual obligation if it fails to tender a defense to its insured.

For example, in <u>Boccone v. Eichen Levinson, LP</u>, 2007 WL 77328 at \*8-9 (D.N.J. Jan. 5, 2007), *aff'd*, 301 Fed. Appx. 162 (3d Cir. 2008), Judge Chesler held that the insured was entitled to summary judgment on both the carrier's breach of the duty to defend and its bad faith and denied the insurer's cross motion for summary judgment.  The Court stated:

> It is clear that although Plaintiff couches his claims in terms of fraud and deceit, Counts One and Two of the Complaint essentially state a claim for breach of the duty imposed by the child support judgment lien statute, that is, that Defendants did not do what the statute required and satisfy the child support judgment lien out of the settlement proceeds.
>
> Plaintiff's assertion of a conversion or "theft by conversion" claim does not allow American Safety to disclaim coverage based on the fraudulent, criminal or intentional act exclusion or the conversion exclusion cited by American Safety in response to Defendants' tender of defense. The law is clear that an insurer must assume the defense when a covered claim has been asserted against the insured while reserving its rights to disclaim coverage as to the arguably excluded claims.
>
> Thus, the Court finds that American Safety has breached its obligation to provide coverage as required by the Policy. The Court also finds that its denial of coverage constitutes bad faith. An insurer, such as American Safety, bears a duty to exercise good faith in processing its insured's claims. <u>Pickett v. Lloyd's</u>, 131 N.J. 457, 467 (1993). A claim of bad faith denial of benefits requires that the insured demonstrate "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim ... knowledge

of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless indifference to facts or to proofs submitted by the insured.". . . The claim cannot be sustained if interpretation of the insurance policy is "fairly debatable." *Id.* The Court finds that whether the Policy covered Plaintiff's claims against Defendants was not a "fairly debatable" question, particularly after the Complaint was amended to add a negligence claim. Defendants renewed their request for coverage when the Complaint was amended, but American Safety failed to inform Defendants of their ultimate determination of this request and thus, in effect, disclaimed coverage. The Court finds that, as a matter of law, American Safety lacked a reasonable basis to deny coverage.

In the instant case, while certain counts of the operative *Pacific Rollforming* Complaint arguably do not trigger the duty to defend under the Liberty CGL the claims based upon disparagement do fall within the Personal and Advertising Injury Endorsement and do not fall within any of the policy exclusions.

These disparagement claims do not arise out of the Master License Agreement or any duties as a successor to Trakloc International. Moreover, Liberty should not be permitted to hide behind allegations in the pleadings designed to position the plaintiff to seek punitive damages against the insureds, particularly where Mr. Jablow steadfastly denies any wrongdoing and asserts that any communications to third parties were truthful.

32

## **CONCLUSION**

For all of the foregoing reasons, counterclaimants, Trakloc North America, LLC, David Jablow and Tinplate Purchasing Corporation should be granted partial summary judgment and the Court should determine that Liberty is obliged to pay its insureds' defense costs in the *Pacific Rollforming* Litigation while Liberty's cross motion for partial summary judgment seeking a declaration that it has no duty to defend should be denied.

Respectfully submitted,

JAY J. RICE