**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LIBERTY INSURANCE CORPORATION, | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 09-5221 (WHW) |
| | : | |
| TINPLATE PURCHASING CORPORATION, TRAKLOC NORTH AMERICA, LLC and DAVID JABLOW, | : | |
| Defendants/ Counterclaimants. | : | |

**Walls, Senior District Judge**

Defendants Tinplate Purchasing Corporation, Trakloc North America, LLC, and David Jablow ("defendants") move for partial summary judgment against plaintiff Liberty Insurance Corporation ("plaintiff") on the issue of plaintiff's duty to defend. Plaintiff opposes defendants' motion, cross-moves for summary judgment, and moves to strike portions of David Jablow's certification. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motions are decided without oral argument. Defendants' motion for summary judgment is denied, plaintiff's motion for summary judgment is granted and plaintiff's motion to strike is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Liberty Insurance Corporation is an Illinois insurance company with its principal place of business in Massachusetts. (Compl. ¶ 2.) Defendant Tinplate is a New Jersey corporation, defendant Trakloc is a Delaware limited liability company, and both have their

1

**FOR PUBLICATION**

principal places of business in New Jersey.  (Compl. ¶¶ 3-4, Answer ¶ 4.)  Defendant David

Jablow resides in New Jersey and is an officer and manager of Trakloc North America, LLC, and

Tinplate Purchasing Corporation. (Jablow Cert. ¶ 1.)

     Plaintiff issued to Tinplate a series of General Liability Policies, each providing $1

million in coverage.  (Compl. ¶ 10, Jablow Cert. ¶ 3.)  These policies were issued for three

consecutive one-year terms and provided continuous coverage from May 24, 2006 to May 24,

2009.  (Id.)  Trakloc was an additional insured under the two most recent policies. (Joint

Stipulation filed on February 16, 2010, ¶ 1.)  Jablow is covered for his conduct in his capacity as

the manager of Trakloc and an officer of Tinplate.

     On or about September 27, 2007, Trakloc and Jablow were named as defendants in

litigation commenced by Pacific Rollforming, LLC ("Pacific") in the United States District

Court for the Southern District of California.  (Jablow Cert. ¶ 5, Ex. D.)  The defendants did not

notify plaintiff of the litigation at that time, opting instead to "engage in a series of lengthy

negotiations regarding various business solutions in an attempt to resolve their differences."

(Jablow Cert. ¶ 6.)  Pacific filed a First Amended Complaint on October 12, 2007, and a Second

Amended Complaint on September 25, 2008.  (Compl. ¶ 16.)  When negotiations failed, Jablow

hired California litigation counsel, Ms. Irena Leigh Norton, to represent Tinplate, Trakloc and

Jablow in the California case.  On January 26, 2009, Ms. Norton tendered a notice of claim

requesting defense and indemnification from Liberty. (Compl. ¶ 22.)  She attached a copy of the

Second Amended Complaint, along with correspondence explaining that the pleading asserted

claims for breach of contract, fraud, breach of the implied covenant of good faith and fair

dealing, defamation, interference with contract/prospective economic advantage, RICO, and

injunctive and declaratory relief.  Ms. Norton asserted that the claims for defamation and tortious

2

**FOR PUBLICATION**

interference brought the defense of all of the claims within the ambit of the policy. (Jablow Cert. ¶ 7, Ex. E.)  Pacific filed a Third Amended Complaint on September 8, 2009, naming Tinplate as a defendant for the first time.[1] (Answer to Am. Compl., ¶ 15, Love Decl. Ex. D.)

Pacific states in its complaint that it entered into Master Area License Agreements ("License Agreements") with entities to whom Trakloc and Tinplate were successors-in-interest. (Third Am. Compl. ¶¶ 9-10, 14.)  These License Agreements granted to Pacific the exclusive right to manufacture and market, in certain territories, a proprietary drywall and stud framing system known as Trakloc.  (Id. at ¶ 9-10.)  Pacific alleges that the License Agreements required Trakloc and Tinplate to:  1) deliver to Pacific all tangible forms of technical information about the Trakloc system; 2) advise Pacific of any national or regional marketing programs and allow Pacific to participate in them; 3) provide Pacific with a complete set of standardized marketing information; 4) promptly forward to Pacific any and all leads, inquiries or contacts related to the sale of the products and its territories; 5) arrange for machines to manufacture the product to be made available to Pacific on an exclusive basis in its territory and obtain various approvals of the product; 6) provide Pacific with written information about all improvements and enhancements to the system; and 7) protect the exclusive territory of Pacific.  (Id. at ¶ 14.)

The Complaint alleges that Trakloc and Tinplate breached many of these contractual obligations.  The fourth cause of action for defamation, made against Trakloc and Jablow, alleges that the previous allegations of breach of contract also constitute libel and slander.  As example, Pacific claims that Trakloc and Jablow made statements to others that Pacific was not licensed for the Trakloc product, that it lacked certification to sell the product, that it was unable

---

[1] The claims in the Third Amended Complaint do not materially differ from those in the Second Amended Complaint.  All of the complaints included causes of action for "defamation" and "interference with contract/prospective economic advantage."

FOR PUBLICATION

to meet its delivery commitments, that it had no right to attend marketing presentations for the product, and that Trakloc was taking over Pacific's markets for the product. (Third Am. Compl. ¶ 34.) Pacific says that all of these statements were made as part of a "conspiracy to destroy [Pacific] and put [Pacific] out of business by defaming [Pacific]." (Id.)

The fifth cause of action for "interference with contract/prospective business advantage" includes all three defendants. Pacific claims that all of the breaches of the License Agreements it complained of in the previous causes of action were committed with the express purpose of putting Pacific out of business by disrupting its relationship with its distributors, customers, potential customers and potential investors. (Third Am. Compl. ¶ 39.) It further alleges that Trakloc and Jablow "conspired . . . to ship product into [Pacific's] territory in violation of the License Agreements." (Id. at ¶ 41.) Finally, the twelfth cause of action is also titled "interference with prospective business advantage," and asserts that Jablow and another individual interfered with Pacific's attempts to enter into a partnership with its largest creditor. (Id. at ¶ 85.) This claim was dismissed by the Court's Order of June 17, 2010. (Pl. Br. 9.)

Liberty acknowledged receipt of the claim on February 25, 2009. (Jablow Cert. ¶ 8, Ex. F.) It filed a Complaint for Declaratory Judgment in this Court on October 13, 2009 (Dkt. No. 1), and sent a letter denying defendants' request for defense and indemnification on October 16, 2009, citing four exclusions to the personal and advertising injury provisions. (Rowell Decl. ¶ 6, Ex. E.) On July 7, 2010, the parties filed cross-motions for summary judgment. (Dkt. No. 27, 28.) On July 28, 2010, the plaintiff filed a motion to strike portions of David Jablow's certification (Dkt. No. 31.)

FOR PUBLICATION

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The moving party must show that the non-moving party has failed to "set forth," by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."  See Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. Scott, 550 U.S. at 380 (citing Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  To survive a motion for summary judgment, a non-movant must present more than a mere "scintilla of evidence" in his favor.  Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The opposing party must set forth specific facts showing a genuine issue for trial. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial.  See Anderson, 477 U.S. at 249.

## DISCUSSION

Plaintiff and defendants do not dispute the material facts at issue.  They agree that they are bound by the policy and that the policy provisions will determine whether plaintiff is

**FOR PUBLICATION**

obligated to defend and indemnify defendants in the underlying action.  Additionally, plaintiff

does not dispute that the claims for defamation and tortious interference constitute "personal and

advertising injury."  However, the parties dispute the meaning of certain terms and exclusions of

the policy and the extent of the resulting coverage.  Plaintiff argues that the claims are not

covered because they fall within any of four exclusions to the policy: "breach of contract,"

"contractual liability," "material published with knowledge of falsity," or "knowing violation of

the rights of another."  (Compl. ¶¶ 24-27.)  Defendants argue that that plaintiff's no-coverage

allegations are unsupported by the text of the policy and that Liberty has violated its contractual

duty to defend. (Df.  Br. 8.)

   This court, sitting in diversity, must interpret each of the disputed policy provisions under

New Jersey insurance law to determine their meaning.  See Erie R.R. Co. v. Tompkins, 304 U.S.

64, 78 (1938).  The Court will grant summary judgment based on its determination of the

meaning of the disputed terms under New Jersey law and the resulting coverage afforded by the

policy.  See Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am., 559 F.

Supp. 2d 504, 510 (D.N.J. 2008) ("Under New Jersey law, '[t]he interpretation of an insurance

contract on undisputed facts is a question for the court to decide as a matter of law and can be the

basis for summary judgment.'" (citation omitted)).

### I.      The Breach of Contract Exclusion

   Each of the insurance policies issued to defendants included an Endorsement for Personal

and Advertising Injury, defined in relevant part as "oral or written publication of material that

slanders or libels a person or organization or disparages a person's or organization's goods,

products or service."  (Compl. ¶ 14.)  The Liberty policies also contained an exclusion titled

"Breach of Contract," which excluded coverage for "'[p]ersonal and advertising injury' arising

FOR PUBLICATION

out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement."  (Id. at ¶ 15.)  Plaintiff and defendants disagree as to whether this "breach of contract" exclusion applies.  Plaintiff argues that the defamation and tortious interference claims arise out of the breach of contract claims and are excluded from coverage.  Defendants argue that the tort claims are "separate and distinct" from the breach of contract claims.

     *(A)  Legal Standard*

     Under New Jersey law, the duty to defend is triggered "when the complaint states a claim constituting a risk insured against."  Danek v. Hommer, 28 N.J.Super. 68, 77 (App. Div. 1953).  To determine whether the insurer has a duty to defend, the Court must compare "the allegations in the complaint with the language of the policy."  Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992).  If the two correspond, then the insurer bears a duty to defend, regardless of the claim's actual merit.  Id.  Insurance policy exclusions "must be narrowly construed; the burden is on the insurer to bring the case within the exclusion."  Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997).  Any ambiguities in policy language will be resolved in favor of the insured to order to give effect to the insured's reasonable expectations.  Voorhees, 128 N.J. at 175.  However, an insurance policy should generally be interpreted "according to its plain and ordinary meaning."  Id. at 175.  Exclusions "are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'"  Chunmuang, 151 N.J. at 95 (citing Doto v. Russo, 140 N.J. 544, 559 (1995)).

     The Supreme Court of New Jersey has noted that "[t]he critical phrase 'arising out of,' which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation."  Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 35 (1998).  That Court found that the phrase "'arising out of' has been defined broadly in other

**FOR PUBLICATION**

insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided.'" Id. (citations omitted).  In American Motorists, the plaintiff-employee sued his former employer for wrongful termination based on age discrimination.  Id. at 31.  He also "alleged causes of action based on breach of contract, breach of the implied covenant of good faith, wrongful discharge, negligence, tortious interference with contract, respondeat superior, and intentional infliction of emotional distress." Id. at 32.  The employer was covered by a comprehensive general liability (CGL) policy which contained an "employee exclusion," providing that "the insurance did not apply to 'bodily injury' to '[a]n employee of the insured arising out of and in the course of employment by the insured.'" Id.  The Supreme Court of New Jersey found that the employee's "cause of action for wrongful termination based on age discrimination unquestionably arose out of and in the course of his employment, as did the essential factual allegations on which the cause of action was predicated."  Id. at 42.  The "arising out of and in the course of employment" language of the insurance policy was "clear and unambiguous," and the court held that it precluded coverage for the employee's wrongful discharge claim.  Id. at 41.

The "substantial nexus" test has become the standard test for interpreting the phrase "arising out of" as it is used in New Jersey insurance policies. See Penn Nat'l Ins. Co. v. Costa, 198 N.J. 229, 237 (2009) ("The almost universal utility of the substantial nexus test in the area of insurance coverage questions is evident from the breadth of contexts to which it has been applied.").  However, this Court has found only one New Jersey decision, unpublished, which interprets the phrase "arising out of" in a "breach of contract" exclusion context.

In Glenmark Pharm., Inc. v. Franklin Mut. Ins. Co., the plaintiff-insured, Glenmark, appealed from an order granting summary judgment to the defendant, Franklin Mutual, and

**FOR PUBLICATION**

dismissing plaintiff's declaratory judgment action.  2008 WL 5194305, at *1 (N.J. App. Div.

Dec. 12, 2008).  The CGL policy in that case provided coverage for "personal and advertising

injury," but exempted coverage for "[i]njury arising out of breach of contract."  Id.  Glenmark

was sued by Breckenridge Pharmaceutical in Florida.  Id.  Breckenridge alleged that Glenmark

had "breached a confidentiality agreement that the two companies had entered into prior to

discussions regarding the development, manufacture and sale of a particular product."  Id.  About

one year later, Glenmark contracted with another company to market and sell a similar product,

and Breckenridge filed suit when it learned of the agreement.  Id.  In its amended complaint,

Breckenridge alleged "breach of contract as well as misappropriation of trade secrets,

conspiracy, and tortious interference with a business relationship."  Id. at *2.  Franklin Mutual

denied coverage and Glenmark sued to recover the costs of its defense.  Id. at *1.

　　　　The motion judge granted Franklin Mutual's motion for summary judgment because "he

concluded that every claim that Breckenridge made against plaintiff in the Florida proceeding

arose out of the alleged breach of the parties' written confidentiality agreement, and was

therefore excluded by the specific terms of the policy."  Id.  On appeal, Glenmark argued that the

motion court erred because "Breckenridge's claims stemmed from more than just plaintiff's

alleged breach of the confidentiality agreement."  Id. at *2.  The appellate court disagreed and

affirmed the court below, explaining that "[a]ll of Breckenridge's claims, had they been proven,

would have been engendered by conduct in violation of the explicit terms of the confidentiality

agreement."  Id.  Consequently, the breach of contract exclusion applied and Franklin Mutual was

not obligated to defend.  Id. at *3.

　　　　In addition, courts in this district have also applied exclusions for claims "arising out of

breach of contract" to reject coverage for underlying tort claims that had a "substantial nexus" to

**FOR PUBLICATION**

claims for breach of contract. See <u>North Plainfield Bd. of Educ. v.  Zurich Am. Ins. Co.</u>, No. 05-4398, 2008 WL 2074013 (D.N.J. May 15, 2008); <u>Light v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, No. 08-2534, 2008 WL 5233867 (D.N.J. Dec. 12, 2008).  In <u>North Plainfield</u>, the insured Board of Education (the "Board") hired a contractor to renovate several schools.  2008 WL 2074013, at *2.  The Board became unhappy with the contractor's work and terminated those contracts.  <u>Id.</u> at *3.  The contractor filed suit against the Board asserting various claims including breach of contract, defamation and tortious interference with prospective economic advantage.  <u>Id.</u>  The court found that all of the claims:

> [F]low from or bear a substantial nexus with Count 8, [the contractor's] breach of contract claim because they arise from the same essential facts and circumstances, namely the Board's alleged 1) misrepresentations and omissions that induced [the contractor] to enter into the Project contracts, 2) interference with [the contractor's] performance of its work on the Project, 3) issuance of default letters to [the contractor] threatening termination, 4) publishing false statements about [the contractor's] performance of the Project contracts, and 5) wrongful termination of the Project contracts.

<u>Id.</u> at *14.  The court held that all of the claims asserted against the Board were excluded by the plain language of the breach of contract exclusion.  <u>Id.</u> at 9.

Similarly, in <u>Light</u>, a breach of contract exclusion was also applied to exclude coverage for tort claims which bore a substantial nexus to claims for breach of contract.  2008 WL 5233867, at *4.  Plaintiffs were the commissioners of a government authority that had contracted for the construction of a sewage treatment facility.  <u>Id.</u> at *1.  The relationship between the parties deteriorated.  <u>Id.</u>  The contractor sued the authority and its commissioners, alleging breach of contract and related tort claims.  <u>Id.</u>  In a tort count for civil conspiracy, the contractor alleged that the commissioners fraudulently misattributed the cause of the facility's malfunction to construction rather than engineering problems.  <u>Id.</u>  The policy covering the authority excluded claims "arising out of breach of contract."  The court relied upon <u>American Motorists</u>

**FOR PUBLICATION**

and <u>North Plainfield</u> to find that the civil conspiracy claim "clearly had its origins in, flows from

or has a connection to [the construction] contract and any breach thereof.  Indeed, the very

defects about which the Commissioners were allegedly conspiring constituted the alleged breach

of contract at issue."[2]  <u>Id.</u> at *4.  The court held that National Union was "under no obligation to

provide the Commissioners with a defense or to pay their defense costs." <u>Id.</u> at *5.

    *(B) Analysis*

    Plaintiff argues that, under the relevant case law, the defamation and tortious interference

claims "flow from or bear a substantial nexus with" the breach of contract claims alleged by

Pacific.  Plaintiff contends that the circumstances of this case bear a striking factual similarity to

those in <u>North Plainfield</u> and <u>Light</u>. (Pl. Br. 17.)  In the absence of the license agreements and

their alleged breach, there would be no defamation or tortious interference claims. (Pl. Br. 21.)

Defendants concede that certain counts of the Third Amended Complaint arise out of breach of

contract, but argue that the alleged acts of oral and written disparagement are "separate and

independent" of the licensing agreements.  (Df. Br. 16.)

    The Court finds that the defamation and tortious interference claims bear a "substantial

nexus" to the breach of contract claims, and are therefore excluded under the policy.  Defendants

argue that the "substantial nexus" test is "not the law in this jurisdiction"  (Df. Br. 16), and cite

<u>Houbigant, Inc. v. Fed. Ins. Co.</u>, 374 F.3d 192 (3d Cir. 2004).  However, the "substantial nexus"

test is precisely the law as announced by the Supreme Court of New Jersey in <u>American

Motorists</u>.  155 N.J. 29, 35 (1998).  The <u>Houbigant</u> court apparently overlooked the <u>American

Motorists</u> decision, and used a "but for" test taken from a New Jersey appellate decision instead.

---

[2] Defendants argue that <u>Light</u> is distinguishable because the policy at issue defined the phrase "arising out of."  <u>See</u>
2008 WL 5233867,  at *2.  However, the court held that coverage was excluded under the "substantial nexus test"
and did not rely upon the policy's definition for its holding.  <u>Id.</u> at *4-5.

**FOR PUBLICATION**

374 F.3d at 202-03.  The Court therefore does not rely upon the "but for" test used in <u>Houbigant</u>.

Nonetheless, the Court notes that in both <u>North Plainfield</u> and <u>Light</u>, the courts found that both

the "substantial nexus" and "but for" tests were met when the underlying claims for defamation

or tortious interference were closely intertwined with the allegations for breach of contract.  <u>See</u>

<u>North Plainfield</u>, 2008 WL 2074013, at *9; <u>Light</u>, 2008 WL 5233867, at *5.

      The tort and contract claims are inextricably linked, because the tort claims against the

defendants arise from the same essential facts and circumstances as those which underlie the

breach of contract claims.  Pacific's fourth cause of action specifically alleges defamation

regarding Pacific's performance of its obligations under the License Agreements.  (Third Am.

Compl. ¶ 34.)  It alleges that defendants made false statements about Pacific being in default of

the License Agreements, lacking proper certification to sell the product, being unable to meets its

product delivery commitments, and having no right to attend marketing events that the License

Agreements permitted Pacific to participate in.  (<u>Id.</u>)  Pacific also alleges that defendants made

false statements about having the right to deal directly with Pacific's customers, and about

defendants taking over Pacific's business, customers, and markets, all in contravention of the

License Agreements.  (<u>Id.</u>)  The tortious interference claims allege that the defendants conspired

to ship product into Pacific's exclusive territory "in violation of the License Agreements" (<u>id.</u> at

¶ 41) and that they committed all of these acts with the express purpose of putting Pacific out of

business.  (<u>Id.</u> at ¶ 39.)  In <u>Glenmark Pharmaceuticals</u>, the court found that coverage was

excluded because "[a]ll of Breckenridge's claims, had they been proven, would have been

engendered by conduct in violation of the explicit terms of the confidentiality agreement."  2008

WL 5194305, at *2.  Here, all of Pacific's claims, had they been proven, would have been

engendered by conduct in violation of the explicit terms of the License Agreements.  There is

**FOR PUBLICATION**

significant overlap between the tort claims and the contract claims in the underlying case - a substantial nexus between the two.

Basically, the present defendants are in the same position as the insured parties in <u>North Plainfield</u> and <u>Light</u>.  The underlying action brought by Pacific focuses primarily on the alleged breach of the License Agreements, and the additional tort claims brought against the defendants have their origin in, flow from or have a substantial nexus to that contract and any breach thereof.  In <u>North Plainfield</u>, the court found that tort claims were excluded under the "substantial nexus" test because they "grew out of the same misconduct" underlying the breach of contract claim.  2008 WL 2074013, at *14.  The tort claims were tied specifically to the Board's disparaging statements regarding the contractor's performance under its contracts with the Board.  <u>Id.</u>  Here, the tort claims are tied to the defendants' disparaging statements regarding Pacific's performance under the License Agreements that it had with the defendants.   In <u>Light</u>, the court noted that "the very defects about which the Commissioners were allegedly conspiring constituted the alleged breach of contract at issue."  2008 WL 5233867, at *4.  And so here, the alleged acts of defamation and tortious interference are based on the same facts underlying the breach of contract claims, and the alleged disparaging statements themselves constitute breach of contract.  The tort and contract claims are inextricably linked.

Defendants rely upon a recent decision of the New Jersey Supreme Court, <u>Flomerfelt v. Cardiello</u>, 202 N.J. 432 (2010), from which they contend the court found the phrase "arising out of" to be ambiguous.  However, the court only found the phrase "arising out of" to be ambiguous within the very specific factual circumstances of that case.  <u>See id.</u> at 456.  The plaintiff, Wendy Flomerfelt, "sustained temporary and permanent injuries after she overdosed on alcohol and drugs during a party hosted by defendant Matthew Cardiello at his parents' home while they

**FOR PUBLICATION**

were out of town." Id. at 436.  The defendant turned to his parents' homeowners' insurer, seeking defense and indemnification under the policy.  Id.  The insurer denied coverage, "pointing to the language of its policy that excluded claims 'arising out of the use . . . transfer or possession' of controlled substances."  Id.  The record was inconclusive as to the cause of the plaintiff's injuries; she may have been injured by alcohol or drugs or both, either before, during or after the party (as there was a delay in summoning aid).  Id. at 457.  The court found the phrase "arising out of" to be ambiguous "in circumstances arising from potentially concurrent causes." Id. at 456.  Such is not before this Court; there are no allegations of alternative causation.  Pacific does not allege injuries to its business that, hinging upon causation, could potentially be included or excluded by coverage.  Indeed, the Flomerfelt court reaffirmed that the "substantial nexus" test is the appropriate default test to use when interpreting the phrase "arising out of" in insurance contracts.  See Flomerfelt, 202 N.J. at 456  ("[I]n light of the principles we announced in American Motorists, the insurer's decision to use the phrase 'arising out of' with no further qualification imposes upon it the meaning we ascribed when explaining our understanding of that phrase.").

        Finally, defendants argue that the plaintiff is "conflating the mere existence of the License Agreements with a breach of the License Agreements," and that the tort claims are "separate and independent" from the claims for breach of contract. (Df. Br. 16; Df. Opp. Br. 10.) The Court finds these arguments unpersuasive.  The exclusion applies because Pacific's allegations of defamation and tortious interference arise from the same essential facts and circumstances as Pacific's breach of contract claims.  The alleged defamatory statements themselves constitute breaches of the License Agreements.  If Pacific were to prove its defamation and interference with contract claims against defendants, it will necessarily have also

**FOR PUBLICATION**

proved breach of contract.  In <u>North Plainfield</u>, the court found that the insurer was not obligated

to indemnify the Board for personal and advertising injury because "the Board's alleged

misconduct . . . was not independently tortious, but instead, arose from the Board's alleged

breach of the project contracts."  2008 WL 2074013, at *20.  Similarly, Liberty is not obligated

to defend for personal and advertising injury because the defendants' conduct was not

independently tortious (as defendants argue), but rather, arose from the defendants' alleged

breach of the License Agreements.  The policy not only excludes claims for breach of contract,

but also claims "arising out of" breach of contract.  If tort and contract claims as intertwined as

these were not found to "arise out of" breach of contract, no claims could.

In sum, the defendants' request for defense and costs for the defamation and tortious

interference claims of the Pacific action falls squarely within the "breach of contract" exclusion

in their policy with Liberty.  The plaintiff's motion for summary judgment is granted, and the

defendants' cross-motion for summary judgment is denied.  Because this application of the

"breach of contract" exclusion fully disposes of the defendants' request for coverage, it is

unnecessary for this Court to consider or reach a decision on the parties' arguments concerning

the application of the "contractual liability," "material published with knowledge of falsity," or

"knowing violation of the rights of another" exclusions.

**II.**   **<u>Estoppel</u>**

Defendants argue that, even if the Court holds that an exclusion applies, Liberty should

be estopped from denying a defense due to its extensive delay in communicating a coverage

decision.  (Df. Br. pp. 26-29.)  As noted, the defendants were initially sued by Pacific on or

about September 27, 2007.  The defendants did not notify Liberty of the litigation at that time,

instead choosing to negotiate with Pacific "in an attempt to resolve their differences."  (Jablow

**FOR PUBLICATION**

Cert. ¶ 6.)  When these negotiations failed, defendants tendered a notice of claim requesting defense and indemnification from Liberty on January 26, 2009.  On February 25, 2009, Liberty acknowledged receipt of the claim, expressly reserving all of its rights under the applicable law and policy.  (Rowell Decl. ¶ 6, Ex. E.)  On October 16, 2009, Liberty denied defendants' request for defense and indemnification.

The defendants state that "[a]lthough it is difficult to predict precisely how things would have turned out differently if Liberty had promptly decided the coverage issue, the defendants may have made additional efforts to pursue settlement or may have made different business decisions regarding how to capitalize on Trakloc intellectual property."  They also say that "they may have been able to conduct more aggressive discovery and motion practice," and "may have been able to narrow the scope of the action or obtain summary adjudication of certain claims." (Jablow Cert. ¶¶ 22-23, Ex. P.)

*(A)  Legal Standard*

When an insurer receives from its insured "a claim or notification of an incident that may give rise to a claim, an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy." Griggs v. Bertram, 88 N.J. 347, 357 (1982) (citations omitted).  However, "once an insurer has had a reasonable opportunity to investigate, or has learned of grounds for questioning coverage, it then is under a duty promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned." Id.  An insurer's "[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer, even before assuming actual control of a case or a defense of an action, can estop [the] insurer from later repudiating responsibility under the insurance policy." Id. at 359.  Prejudice, however, "is an

16

**FOR PUBLICATION**

essential ingredient" of estoppel.  Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 129 (1962).

To determine "whether an insurer should be estopped from asserting exclusion defenses under

policies because of prejudice to the insured, the test is whether the insurer's acts or omissions

'constitute[d] a material encroachment upon the rights of an insured to protect itself by handling

the claim directly and independently of the insurer.'"  Reliance Ins. Co. v. Armstrong Worldwide

Indus., Inc., 292 N.J. Super. 365, 375 (App. Div. 1996) (citing Griggs, 88 N.J. at 359).

   *(B)  Analysis*

Defendants rely primarily upon Griggs to argue that the plaintiff should be estopped from

denying coverage in this case.  However, the defendants' reliance upon Griggs is misplaced.

There, the insurer received notice of a potential claim more than a year before any litigation was

commenced, and also received timely notice of the claim once it was filed.  Griggs, 88 N.J. at

352.  In the interim period, Franklin Mutual "gave no indication that any potential claim or legal

action arising from [the] incident would not be covered under the policy or that it would disclaim

coverage in the event such a claim or action were brought."  Id. at 353.  This fact was key to the

court's finding of prejudice.  Because although the insurer had "neither assumed the actual

control of [the] case nor undertaken to preparation of any defense," id. at 357, a period of 18

months had elapsed where the insurer "chose to say absolutely nothing to its insured as to the

applicability and availability of insurance protection" despite having been "alerted to sufficient

facts to cause it to question or possibly reject coverage under the policy." Id. at 361.  The court

found that in a situation such as this, the "insured justifiably expects to be protected by the

carrier and cannot, except at the risk of forfeiting coverage, act for itself under the policy," and

that "these circumstances justify the imputation of prejudice sufficient to raise an estoppel

against the insurer."  Id. at 362.  Such are not the present circumstances.

FOR PUBLICATION

Instead, the facts here are analogous to those in <u>Reliance Ins. Co. v. Armstrong World</u> <u>Indus., Inc.</u>, 292 N.J. Super. 365 (App. Div. 1996).  The defendant-insured gave notice to the plaintiff-insurer within ten days of being served with the underlying complaint.  <u>Id.</u> at 374-75. The insurer sent an acknowledgement letter stating: "We are presently reviewing our obligation to [you].  We will notify you within a reasonable time of our decision in this matter."  <u>Id.</u> at 376. The insurer took nineteen months before ultimately denying the duty to defend.  <u>Id.</u> at 374.  The insured argued "that plaintiff lost the right to rely upon any coverage exclusions because it failed to make a timely coverage determination and to communicate that decision to defendant in a reasonable manner."  <u>Id.</u> at 375.  The court found that the insurer took no action to prejudice the defendant because the "[p]laintiff did not investigate the site or 'assume the defense' of the insured.  Defendant engaged counsel on its own behalf before it received plaintiff's . . . acknowledgement letter."  <u>Id.</u> at 376.  There was "no indication that plaintiff caused defendant to suffer any inability to direct its own defense and investigate the matter."  <u>Id.</u>  The court found that "despite the significant time interval, plaintiff's failure to more timely notify defendant of its decision as to the applicability of the policy exclusions may only act as an estoppel if in fact defendant can show actual prejudice," and the court found "no evidence that plaintiff's actions prejudiced defendant in the settled litigation."  <u>Id.</u> (citation omitted).

Here, the defendants gave plaintiff <u>no</u> notice of the underlying claims or litigation filed by Pacific for sixteen months.  Once it was finally notified, Liberty did nothing to suggest that it would provide a defense.  To the contrary, it reserved its rights to disclaim coverage.  It did so approximately nine months later, ten months sooner than the insurer in <u>Reliance</u>.  But more importantly, the defendants had no reasonable expectation that plaintiff was acting on its behalf. Their freedom of action was not restrained in any way, because they, the defendants, assumed

FOR PUBLICATION

complete control of the settlement negotiations and undertook their own defense before notifying plaintiff of the claim. The defendants' assertions of prejudice are speculative at best, saying that they "may have made additional efforts to settle the case" or "may have made different business decisions."  These assertions simply do not arise to the requisite level of prejudice found in other New Jersey cases. See, e.g., Doto v. Russo, 140 N.J. 544 (1995) (insurer estopped from denying underinsured motorist coverage for an accident after repeatedly giving assurances for three years that coverage was afforded); Barrett v. New Jersey Mfrs. Ins. Co., 685 A.2d 975 (App. Div. 1996) (insurer's authorization to settle tort claim and implicit agreement to pay underinsured motorist benefits estopped insurer from denying benefits).  The plaintiff's delay in making a coverage decision does not require that it be estopped from asserting exclusion defenses under the policies because the defendants were not prejudiced thereby.

**III.    Plaintiff's Motion to Strike**

The plaintiff filed a motion to strike portions of the Certification of David Jablow.  The portions at issue played no role in this Court's decision and the motion is denied.

**CONCLUSION**

Defendants' motion for summary judgment is denied.  Plaintiff's cross-motion for summary judgment is granted, and plaintiff's motion to strike portions of David Jablow's certification is denied.

**s/ William H. Walls**
United States Senior District Judge
